No. 83-183

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

————————

IN RE THE MARRIAGE OF:

ROSE WILLIAMS,

Petitioner and Respondent,

and

DENNIS WILLIAMS,

Respondent and Appellant.

————————

Appeal from: District Court of the Courth Judicial District,
In and for the County of Missoula
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Datsopoulos, McDonald and Lind, Missoula, Montana
Milton Datsopoulos argued and David Cotner argued,
Missoula, Montana

For Respondent:

Terry Wallace argued, Missoula, Montana

————————

Submitted:  December 5, 1983

Decided:  March 1, 1984

Filed: ˙˙˙ ˙ ˙984

_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Dennis Williams appeals from an order of the District Court, Fourth Judicial District, Missoula County, reinstating his obligation to pay maintenance to his previous wife, Rose Williams. We reverse the decision of the District Court and remand the cause to the District Court for further proceedings.

A final decree dissolving the marriage between Rose Williams and Dennis Williams was entered on April 21, 1980. The decree· incorporated an agreement by which the parties attempted to make a complete and final settlement of their property and adjust all of their marital obligations. It provides in part that Dennis Williams make the house payments, including taxes and insurance, on the family home until the family home was paid for or sold, or until Rose Williams remarried. The agreement further provided that if Rose Williams remarried and chose to continue living in the family home Dennis Williams would no longer be required to make the house payments.

On July 10, 1982, Rose Williams remarried. She and her new husband decided to live in the family home and, pursuant to the agreement, Dennis Williams stopped making the house payments.

Two months later, on September 1, 1982, Rose Williams filed a petition to invalidate her recent marriage on the grounds that she lacked the capacity to consent to the marriage and that any consent to the marriage was induced by fraud. The petition was granted and a retroactive decree of invalidity was entered.

- 2 -

On December 8, 1982, Rose Williams filed a petition asking the District Court to enforce the portion of the dissolution decree requiring Dennis Williams to make the house payments. After considering the briefs of counsel, the District Court issued an order in which the court determined that "[p]etitioner's annulment of her second marriage has served to revive respondent's obligation for maintenance." It is from this determination that Dennis Williams appeals. Contrary to the District Court's determination, Dennis Williams contends that his obligation to pay maintenance in the form of house payments was terminated by Rose Williams' remarriage and that this obligation was not automatically revived by the retroactive decree of invalidity.

Historically in Montana the annulment of a marriage rendered that marriage void ab initio, void as of the date of the marriage. State ex rel. Wooten v. District Court (1920), 57 Mont. 517, 189 P. 233; In re Takahashi's Estate (1942), 113 Mont. 490, 129 P.2d 217. In 1975, however, the Montana legislature adopted the Uniform Marriage and Divorce Act which provided that a decree of invalidity or an annulment could be declared nonretroactive as well as retroactive in effect. Section 40-1-402(5), MCA, provides that the court shall declare the marriage invalid as of the date of the marriage "[u]nless the court finds, after a consideration of all relevant circumstances, including the effect of a retroactive decree on third parties, that the interests of justice would be served by making the decree nonretroactive." If a nonretroactive decree of invalidity is issued, the statute further provides that "[t]he provisions of chapter 4 [section 40-4-101 to 40-4-225, inc., MCA] relating to property rights of the spouses, maintenance, support, and

- 3 -

custody of children on dissolution of marriage are
applicable. . ."

These provisions do not alter the status of the
marriage; in the eyes of the law the marriage is deemed as
having never occurred, regardless of whether the decree of
invalidity is declared retroactive or nonretroactive. These
provisions do, however, have an effect on the rights of the
parties to the recent marriage and other third persons,
depending on whether the decree of invalidity is declared
nonretroactive or retroactive. For example, if a decree of
invalidity is declared to be nonretroactive, the spouse
granted the decree may petition the District Court for a
division of the marital property, maintenance, or child
support. Therefore, before making a decision as to the
retroactivity or nonretroactivity of a decree, the District
Court must consider all of the relevant circumstances
including the effect of a retroactive decree on third parties
and balance the equities involved.

Unfortunately, there is no evidence in this record that
the District Court considered any possible effect of a
retroactive decree on third parties before granting the
decree and declaring it to be retroactive.

In some jurisdictions it is well-settled that the
annulment of a marriage permanently terminates any prior
obligation for alimony or maintenance. See Hodges v. Hodges
(1978), 118 Ariz. 572, 578 P.2d 1001; Chavez v. Chavez
(1971), 82 N.M. 624, 485 P.2d 735; Torgan v. Torgan (1966),
159 Colo. 93, 410 P.2d 167. In other jurisdictions, however,
it is well-settled that the annulment of a marriage
automatically reinstates any prior obligation for maintenance
or alimony. See Johnston v. Johnston (1979), 3 Kan.App.2d

- 4 -

208, 592 P.2d 132; Sutton v. Leib (7th Cir. 1952), 199 F.2d 163; Boiteau v. Boiteau (1948), 227 Minn. 26, 33 N.W.2d 703. While there is no consensus among the various jurisdictions as to the effect of an annulment or decree of invalidity on a prior spouse's obligation to pay alimony or maintenance, the underlying basis for the courts' decisions to terminate or reinstate the obligation appears to be the same: equity.

After examining the basis for the other courts' decisions, the Utah Supreme Court in Ferguson v. Ferguson (Utah 1977), 564 P.2d 1380, recognized the anomaly of a strict "all or nothing" rule and adopted a flexible rule which neither automatically restores nor automatically terminates a prior obligation for alimony or maintenance. The court held that:

> "Upon proper application to the District Court invoking its continuing jurisdiction, it should be free to proceed in conformity with its general equitable powers upon these generally sound propositions: that when a wife remarries, her right to receive alimony under the divorce decree from her former husband should terminate, and that an annulment of the subsequent marriage should not automatically restore the alimony under the prior decree. Notwithstanding the foregoing, the court may exercise its sound discretion in ordering reinstatement of the alimony in the prior decree if, upon its consideration of all of the circumstances, it appears clearly and persuasively that that is necessary to rectify serious inequity or injustice." 564 P.2d at 1383.

We find the reasoning of the Utah Supreme Court to be persuasive and adopt the above cited rule. It follows from this that Dennis Williams' obligation to pay maintenance to his previous wife was not automatically reinstated upon the issuance of the decree of invalidity.

The decree finding Rose's second marriage void was entered September 30, 1982. It has become final. In that action, without making the findings required in section

- 5 -

40-1-402(5), MCA, the District Court ordered that the decree of annulment be retroactive. However, the District Court in which the marriage of Rose and Dennis was dissolved has continuing jurisdiction over the parties in matters relating to support and maintenance. In the statutory scheme provided by section 40-1-402, MCA, in allowing annulments to be made nonretroactive, there is no provision as to which court, the court having jurisdiction of the annulment cause, or the court having jurisdiction of the dissolution cause, should determine the rights of "third parties." In the annulment case here, Dennis is a "third party." His objections, if any, to retroactive effect should be heard in court. It is appropriate in this case to require the District Court having jurisdiction of the dissolution cause to provide that opportunity to Dennis for objection and hearing, and for findings to be made by the court leading to its decision.

Based on the foregoing, the decision of the District Court automatically reinstating Dennis Williams' obligation to pay maintenance is reversed and the cause remanded to the same District Court for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

- 6 -

_____

L. C. Bulhandson,

Daniel J. Shea

_____
Justices